IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JESSICA L. KEPILINO, | ) | CIVIL NO. 12-00066 SOM-BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART, |
| | ) | DENYING IN PART, AND STAYING |
| vs. | ) | IN PART, DEFENDANTS' MOTION |
| | ) | FOR JUDGMENT ON THE PLEADINGS |
| STATE OF HAWAII, DEPARTMENT | ) | |
| OF TRANSPORTATION; GLENN | ) | |
| OKIMOTO in his Official | ) | |
| Capacity; RICHARD LIVERMORE | ) | |
| in his Official and | ) | |
| Individual Capacity; LISA DAU | ) | |
| in her Official and | ) | |
| Individual Capacity; and JOHN | ) | |
| DOES 1-5; JANE DOES 1-5; DOE | ) | |
| Government Agencies 1-5, DOE | ) | |
| Corporations 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART, DENYING IN PART, AND STAYING IN PART, DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

I.        INTRODUCTION.

Plaintiff Jessica Kepilino sues her employer, Defendant State of Hawaii Department of Transportation ("HDOT"), HDOT Director Glenn Okimoto, supervisor Richard Livermore, and supervisor Lisa Dau (collectively, "Defendants") for alleged employment discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act, the Equal Protection Clause, and section 378-2 of Hawaii Revised Statutes.

Defendants now move for judgment on the pleadings.  <u>See</u> ECF No. 44 (the "Motion").  The court GRANTS IN PART, STAYS IN PART, and DENIES IN PART the Motion.

II.        **BACKGROUND.**

The HDOT hired Kepilino in 1998.  On September 1, 2000, Kepilino began working as an Office Assistant in the Business Management Office of the HDOT Administration Division, reporting to Livermore and Dau.  Kepilino's claims of discrimination and retaliation arise out of acts that allegedly occurred during her tenure as an Office Assistant.

In November 2007, Kepilino developed "a work-related injury" (apparently carpal tunnel syndrome) and requested "light duty" work.  <u>See</u> EEOC Charge No. 486-2009-00137, attached as Exhibit "E" to ECF No. 53; Second Amended Complaint ("SAC") ¶ 23. Kepilino states that she was intermittently restricted to light duty work, as requested, and that she was able to perform a majority of her Office Assistant duties.  SAC ¶ 23.

In October 2008, Kepilino began meeting with the HDOT Office of Civil Rights ("OCR").  <u>Id.</u> ¶ 25.  She alleges that she began to notice a "change in attitude toward her" around the time of the first meeting.  <u>Id.</u>  Elizabeth-Ann Motoyama, an HDOT OCR officer, allegedly told Kepilino that Dau paid visits to the HDOT OCR for the purpose of intimidating staffers in the OCR.  <u>Id.</u>

On or around December 19, 2008, Kepilino met with Motoyama, at Motoyama's request, to document her complaints about how the HDOT was treating her.  Id. ¶ 26.  On or around December 26, 2008, Motoyama allegedly informed Kepilino that Melanie Martin, the Acting Manager of the HDOT OCR, had asked Motoyama to close Kepilino's complaint without an investigation.  Id.  Martin then allegedly "[took] away" Kepilino's written allegations.  Id. Kepilino states that she never received any results from the OCR investigation.  Id.

Between January 5, 2009, and June 26, 2009, Kepilino took a Total Temporary Disability leave of absence for surgery on both arms to treat carpal tunnel syndrome.  Id. ¶ 27.

On March 19, 2009, Kepilino filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), EEOC Charge No. 486-2009-00137, alleging that the HDOT had discriminated against her based on her disability from November 1, 2007, to January 9, 2009.  Exhibit "E" attached to ECF No. 53; SAC ¶ 28.  The charge, which indicated that it was simultaneously being submitted to the Hawaii Civil Rights Commission, stated:

> In November 2007, I developed a work-related injury which resulted in disability.
>
> Beginning in November 2007, I requested reasonable accommodation from my supervisor, Richard Livermore.  However, he did not take any action to address my requests and doctor's notes.

> In May 2008, I began to be subjected to on-
> going harassment by my other manager, Lisa
> Dau, and other co-workers.  For instance, I
> was scrutinized for coming in to work late.
> I was given work assignments from Accountants
> who are not my supervisors.  My disability
> was discussed among co-workers.
>
> In July 2008, I was transferred from one
> cubicle to another.
>
> . . . .
>
> Retaliation for meeting with the Office of
> Civil Rights - EEOC Officer Elizabeth
> Motoyama. (negative comments - "I am a
> problem", "I am a problem child", announcing
> my injury for others to hear, etc.)
>
> Intimidation from the department head Lisa
> Dau, "Francis Keeno (Deputy Director) will be
> watching me."
>
> Breach of Confidentiality towards my injury
> (mocking and violating disclosure of private
> information.)

Exhibit "E" attached to ECF No. 53.

In June 2009, the HDOT allegedly informed Kepilino that she was prohibited from returning to her Office Assistant position, and that the Personnel Office would attempt to find an alternative light duty position for her.  SAC ¶ 29.  On or around July 10, 2009, Eleanor Young, Personnel Officer, sent Kepilino a letter stating that she was assigned to Pearl Ridge Elementary School for light duty.  SAC ¶ 30. Her tasks included tutoring Special Education students, which Kepilino asserts she was neither trained nor qualified to do.  Id.

On July 6, 2009, Kepilino filed EEOC Charge No. 486-2009-00392, covering the period from June 18 to 21, 2009.  <u>See</u> Exhibit "F" attached to ECF No. 53.  This charge stated:

> I filed an EEOC Charge in March 2009. Respondent is aware of my disability.  I went on disability leave on January 7, 2009.
>
> On June 18, 2009, my doctor faxed a return to work with restrictions note (effective June 29, 2009) to Respondent.
>
> On June 21, 2009, I spoke to Sandra Tomimoto, HR Worker's Compensation Claims Processor, who informed me that I could not return to work because Lisa Dau, Branch Manager, could not accommodate my restrictions.
>
> On this same date, I also received a phone call from Eleanor Young, Personnel Officer, who informed me that I could not return to work because I am unable to fulfill my duties and Respondent was not able to accommodate my restrictions.

<u>Id.</u>

On June 16, 2011, the EEOC issued Kepilino Notices of Right to Sue for EEOC Charge Nos. 486-2009-00137 and 486-2009-00392.  <u>See</u> Exhibits "E" and "F" attached to ECF No. 53.  Both notices stated, "You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost." <u>Id.</u> (emphasis in original).  Kepilino concedes that she did not file suit within ninety days.  <u>See</u> SAC ¶ 16.

On or around November 11, 2009, Dau allegedly hand-delivered to Kepilino a letter from the HDOT Director, Brennon Morioka, informing her that Livermore, Dau, and Young had filed complaints against Kepilino based on Kepilino's EEOC charges against them. Id. ¶ 31.

On November 12, 2009, Kepilino filed EEOC Charge No. 486-2010-00063, covering the period from June 24, 2009 to September 1, 2009.  This charge stated:

> In March 2009 and July 2009, I filed EEOC charges against Respondent.
>
> Respondent is aware of my disability.
>
> From January 2009 through June 2009, I was on medical leave for my disability.
>
> On June 19, 2009, I was released by my doctor to work light duty on June 26, 2009.
>
> However, on June 24, 2009, Eleanor Young, from Respondent's Personnel Office, informed me that I was prohibited from returning to work with Respondent.  Instead, she told me that I would be placed on light duty outside of Respondent's division.
>
> On July 10, 2009, Young informed me that I would report to work at Pearl Ridge Elementary with the State of Hawaii, Department of Education.
>
> On September 1, 2009, I was released to work full duty.  I was placed back to my old position with Respondent.

Exhibit "G" attached to ECF No. 53.

On December 2, 2009, Kepilino filed EEOC Charge No. 486-2010-00084 on the basis of disability discrimination and

retaliation from September 1, 2009, to November 10, 2009.  The

charge stated:

> I filed EEOC complaints in March, July, and
> November 2009.
>
> Since my first day back to work on September
> 1, 2009, Lisa Dau, Business Office Manager,
> and Richard Livermore, Office Services
> Supervisor, have subjected me to harassment
> by making unpleasant comments, as well as
> scrutinizing my work more closely.
>
> On November 11, 2009, I was given a letter by
> Ms. Dau informing me that Mr. Livermore filed
> a complaint against me regarding my EEOC
> complaint.

Exhibit "2" attached to ECF No. 52.  The issues raised by this

charge are now before this court.

On December 15, 2009, the EEOC issued Kepilino a Notice

of Right to Sue for EEOC Charge No. 486-2009-00063.  See Exhibit

"G" attached to ECF No. 53.  It appears that Kepilino did not

file suit within ninety days of this notice.  See ECF No. 12 at

8-9 ¶ 16.

On or around January 14, 2010, Rey Domingo, the Manager

of OCR, allegedly informed Kepilino via e-mail that she was under

investigation in connection with the internal complaints filed by

Livermore, Dau, and Young.  ECF No. 12 at 15 ¶ 33.

On January 21, 2010, Kepilino filed EEOC Charge No.

486-2010-00151, alleging disability discrimination and

retaliation.

I previously filed several EEOC charges
against Respondent.  Since the filing of my
EEOC charges, I have been subjected to a
hostile work environment.

Respondent has been aware of my disability.

On or around January 7, 2010, my supervisor,
Richard Livermore, presented me with an
envelope regarding my light duty note from my
physician Dr. James Yamashita, MD which
placed me on light duty on January 24, 2009.
In the letter, Livermore stated that due to
my disability, they may need to take some
kind of action to address the problem.

On or around January 8, 2010, I testified
under oath as a witness on behalf of a former
co-worker who filed a discrimination
complaint against Respondent.

On or around January 14, 2010, I received an
email from Office of Civil Rights Manager,
Rey Domingo, stating that three individuals
have filed allegations against me.

Exhibit "1" attached to ECF No. 52.  The issues raised by this

charge are now before this court.

On or around October 18, 2010, Kepilino alleges she

received another assignment:

[Kepilino] was informed that she was not to
report to work at HDOT, but that instead, she
would have to sit at a small typewriter table
with wheels, in the middle of the first floor
lobby of the State Building, also known as
the Leiopapa a Kamehameha Building.  This is
a building through which thousands of people
travel daily through its massive lobby.  Ms.
Kepilino was ostracized, laughed at, stared
at, and humiliated by having to sit in the
middle of this huge lobby at a portable,
small table which rolled if she leaned on it
to rest her arms.

8

Id. at 16 ¶ 37.

On January 26, 2011, Kepilino was permitted to return to work at the HDOT.  Id.

On May 1, 2011, Kepilino began working as a Baggage Attendant for the HDOT's Airports Division.  Id. at 11 ¶ 21.  She states that she transferred to this position "due to retaliation and hostile oppressive work environment of retaliation and discrimination . . . amidst numerous obstacles created by HDOT." Id.

On November 2, 2011, the EEOC issued Kepilino a Notice of Right to Sue Within 90 Days regarding EEOC Charge Nos. 486-2010-00084 and 486-2010-00151.  See Exhibit "3" attached to ECF No. 52.  The notice stated:

> You are further notified that you have the
> right to institute a civil action under Title
> I of the Americans with Disabilities Act of
> 1990, 42 U.S.C. § 12111, et seq., against the
> above-named respondent.  If you choose to
> commence a civil action, such suit must be
> filed in the appropriate court within 90 days
> of your receipt of this Notice.

Id.

On January 31, 2012, Kepilino, proceeding pro se, filed a Complaint against the HDOT and Okimoto in this court, alleging violations of the ADA, Title VII, and the Equal Protection Clause.  See ECF No. 1.

On April 17, 2012, the Hawaii Civil Rights Commission issued Kepilino Notices of Dismissal and Right to Sue regarding

9

EEOC Nos. 486-2010-00084 and 486-2010-00151, which were already

before this court following the EEOC's notices.  <u>See</u> Exhibit "4"

attached to ECF No. 52.  This notice stated, "You have the right

to file a private lawsuit against Respondent in the State Circuit

Court within ninety (90) days after receipt of this notice

pursuant to Hawaii Revised Statutes § 368-12 and H.A.R. § 12-46-

20." <u>Id.</u>

On April 24, 2012, Kepilino, with the assistance of

counsel, filed a First Amended Complaint that repeated the

federal claims in the original Complaint, and added Counts 4 and

5, the state law claims under section 378-2.

On May 2, 2012, Kepilino filed a Second Amended

Complaint that repeated the federal and state claims in the First

Amended Complaint, and added Count 6 regarding retaliation under

the ADA.  Kepilino seeks general and special damages, declaratory

and injunctive relief, and attorney's fees.  <u>See</u> ECF No. 12 at

26.

## II.       STANDARD.

Rule 12(c) states, "After the pleadings are closed--but

early enough not to delay trial--a party may move for judgment on

the pleadings."  The standard governing a Rule 12(c) motion for

judgment on the pleadings is "functionally identical" to that

governing a Rule 12(b) motion.  <u>Dworkin v. Hustler Magazine Inc.</u>,

867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference

between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing."). See also United States ex rel. Caffaso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). For a Rule 12(c) motion, the allegations of the nonmoving party are accepted as true, while the allegations of the moving party that have been denied are assumed to be false. See Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1989). A court evaluating a Rule 12(c) motion must construe factual allegations in a complaint in the light most favorable to the nonmoving party. Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). "Judgment on the pleadings under Rule 12(c) is proper when the moving party establishes on the face of the pleadings that there is no material issue of fact and that the moving party is entitled to judgment as a matter of law." Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist., 644 F.3d 934, 2011 WL 2090829, at *2 n.1 (9th Cir. May 27, 2011).

Generally, when matters outside the pleadings are considered, a motion for judgment on the pleadings must be considered as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 12(d). However, when adjudicating a Rule 12(c) motion, a court may consider matters subject to judicial notice without converting the motion to one for summary judgment. See Heliotrope Gen.,

Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18 (9th Cir. 1999)

("When considering a motion for judgment on the pleadings, this

court may consider facts that are contained in materials of which

the court may take judicial notice." (quotations omitted));

accord Lacondequy v. Adapa, 2011 WL 9572, *2 (E.D. Cal. Jan. 3,

2011); Williams v. City of Antioch, 2010 WL 3632199, *2 (N.D.

Cal. Sept. 2, 2010).

III.    ANALYSIS.

A.    Sovereign Immunity Bars Some of Kepilino's Claims.

The Eleventh Amendment grants states immunity from

claims brought by private individuals in federal court.

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100

(1984).  See, e.g., Motoyama v. State, 864 F. Supp. 2d 965 (D.

Haw. 2012).  This immunity does not apply when (1) the state

unequivocally consents to suit, or (2) Congress unequivocally

expresses its intent to abrogate the immunity.  Pennhurst, 465

U.S. at 99.

1.    Kepilino's ADA Claims Under Counts I and VI are
Dismissed.

Title I of the ADA prohibits states and other employers

from "discriminat[ing] against a qualified individual on the

basis of disability in regard to . . . terms, conditions, and

privileges of employment."  42 U.S.C. § 12112(a).  The ADA also

prohibits retaliation: "No person shall discriminate against any

individual because such individual has opposed any act or

12

practice made unlawful by this chapter or because such individual made a charge, testified, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203.

Count I asserts that the HDOT and Okimoto, acting in his official capacity, violated the ADA when they discriminated against Kepilino.  Under Count I, Kepilino seeks declaratory relief, injunctive relief, and damages under the ADA.  Count VI asserts that the HDOT retaliated against her in violation of the ADA.  Count VI does not specify the type of relief sought, other than stating that Kepilino "suffered damages." In Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356 (2001), the Supreme Court held that Congress did not abrogate the states' Eleventh Amendment immunity when it enacted or amended the Act.  Id. at 374.  Furthermore, nothing in the record suggests that the State waived its immunity by consenting to this suit.

Because the HDOT is a state agency, it is entitled to immunity from all ADA claims brought in federal court. Similarly, Okimoto, sued in Count I in his official capacity, is immune from claims for damages because a suit against a state employee in his official capacity "is a suit against the official's office," which "is no different from a suit against the State itself."  See Will v. Mich. Dep't of State Police, 49

13

U.S. 58, 71 (1989); <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985).  Thus, the court grants judgment in favor of the HDOT and Okimoto with regard to Kepilino's ADA claims in Counts I and VI. This court recognizes that the Supreme Court has established a narrow exception to this immunity for claims seeking prospective relief from state officials.  In <u>Ex Parte Young</u>, 209 U.S. 123 (1908), the Court indicated that actions against officials for prospective injunctive relief were not actions against a state. The Supreme Court later clarified, in <u>Papasan v. Allain</u>, 478 U.S. 265 (1986), that the <u>Ex Parte Young</u> exception applies only when a state official engages in an ongoing violation of federal law. <u>Id.</u> at 277-78.  If the alleged violations occurred in the past, or the state official directly ends the violation, then the exception is inapplicable.  <u>Id.</u> at 278 ("Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law.  But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.").

Damage claims against individual employees are not allowed under the ADA.  <u>Walsh v. Nev. Dep't of Human Res.</u>, 471 F.3d 1033, 1038 (9th Cir. 2006).  However, this bar does not necessarily extend to <u>Ex Parte Young</u> claims against a state official for prospective injunctive relief under the ADA.  <u>See</u> <u>Okwu v. McKim</u>, 682 F.3d 841, 846 n.4 (9th Cir. 2012).  Even if

such claims may be brought, that does not keep Count I alive.   In
response to Defendants' contention that the Ex Parte Young
exception is inapplicable to Okimoto because the alleged
violations are not ongoing, Kepilino states in her Memorandum in
Opposition that she "continues to request an office assistant
position with reasonable accommodations and has requested this
numerous times."   ECF No. 52 at 5.   Not only is this assertion
absent from the Second Amended Complaint, there is no allegation
that Okimoto himself is engaging in an ongoing violation of the
ADA, even assuming there are ongoing violations.   Okimoto is not,
for example, alleged to be preventing the granting of Kepilino's
request or to be requiring that Kepilino remain in the HDOT
Airports Division.   Nor is there any allegation that Okimoto is
acting upon an underlying authorization that is illegal.   Given
the absence of any allegation of an ongoing violation by Okimoto,
Kepilino is not entitled to an award against him of prospective
injunctive relief.   See Papasan, 478 U.S. at 277-78.

> **2.    Counts IV and V Against the HDOT Are Barred
> Because the State of Hawaii has not waived
> its Eleventh Amendment Immunity with Respect
> to Section 378-2 Claims.**

Hawaii's anti-discrimination statute, section 378-2 of
Hawaii Revised Statutes, states, "It shall be an unlawful
discriminatory practice . . . [b]ecause of . . . disability . . .
[f]or any employer to . . . bar or discharge from employment, or
otherwise to discrimination against any individual in

15

compensation or in the terms, conditions, or privileges of employment . . . ."  Haw. Rev. Stat. § 378-2(a)(1)(A). Sections 661-1 and 662-2 of Hawaii Revised Statutes waive the State's immunity to certain types of suits.  However, neither of these waivers applies to the instant case.  In section 661-1, the State consents to being sued for monetary relief for violations of state statutes, state regulations, and contracts entered into with the state.  See Office of Hawaiian Affairs v. Dept. of Educ., 951 F. Supp. 1484, 1491 (D. Haw. 1996).  In a case arising out of the alleged misuse of income derived from Hawaii's ceded lands, the Ninth Circuit interpreted section 661-1 as not constituting a waiver of Hawaii's Eleventh Amendment immunity. Price v. Hawaii, 921 F.2d 950, 958 (9th Cir. 1990).  Kepilino does not establish that section 661-1 should be read broadly as waiving the State's immunity from federal claims not mentioned in section 661-1.

Similarly, in section 662-2, the State consents to being sued in tort actions.  However, this provision does not waive the Hawaii's Eleventh Amendment immunity in civil rights actions brought under state statutes.  Au v. Hawaii, 735 F. Supp. 963 (D. Haw. 1989), aff'd, 899 F.2d 1224 (9th Cir. 1990). Au examined Figueroa v. State, 61 Haw. 369, 383-84, 604 P.2d 1198, 1206-07 (1979), in which the Hawaii Supreme Court noted that the effect of section 662-2 "is to waive immunity from

16

traditionally recognized common law causes of action in tort, other than those expressly excluded." Figueroa held that there is "no provision in the State Tort Liability Act that expressly makes the State liable in money damages for constitutional violations." Id. Accordingly, Au concluded that "Hawaii's State Tort Liability Act is not an express waiver of the State's Eleventh Amendment immunity from civil rights suits." Au, 735 F. Supp. at 965. Au held that, because a § 1983 claim against Hawaii is a civil rights action, it must be dismissed for lack of subject matter jurisdiction given Hawaii's Eleventh Amendment immunity. Id.

In Counts IV and V, Kepilino asserts claims against the HDOT for alleged employment discrimination in violation of section 378-2. Because these are civil rights claims for which the State of Hawaii has not waived its Eleventh Amendment Immunity, Kepilino's claims against the HDOT fail. Au, 735 F. Supp. at 965; see also Will, 491 U.S. at 66 (noting that Congress did not intend to disturb the states' Eleventh Amendment immunity when it passed § 1983 and holding that § 1983 claims against states are barred by Eleventh Amendment immunity).

**B. Kepilino's Title VII Claim Against the State is Sufficient for Purposes of this Motion.**

Title VII prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Title VII also prohibits retaliation when the

employee "has opposed any practice made an unlawful employment practice by this subchapter, or . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3.  States can be liable under Title VII.  <u>See Fitzpatrick v. Bitzer</u>, 427 U.S. 445, 456 (1976) (noting that congressional authorization to sue a state is "clearly present" under Title VII).

In Count II, Kepilino sues the HDOT and Okimoto in his official capacity for retaliation relating to her "testi[mony] as a witness at an Administrative Hearing in support of a [p]laintiff who had filed a Title VII and ADA lawsuit against HDOT".[1]

Because Title VII does not allow damage claims against individual employees, <u>Williams v. United States General Services Administration</u>, 905 F.2d 308, 311 (9th Cir. 1990), no Title VII damages are available from Okimoto, who, in any event, is sued

---

[1] Kepilino also bases her Title VII retaliation claim on Defendants' alleged harassment of her, allegedly in response to her own complaints filed with the HDOT Office of Civil Rights and the EEOC.  This argument fails because Kepilino nowhere asserts that any of her own discrimination complaints was based on race, color, religion, sex, or national origin.  She may not base a Title VII retaliation claim on harassment allegedly flowing from a complaint that did not fall within the scope of Title VII.  <u>See generally</u> <u>Jura v. Cnty. of Maui</u>, 2012 WL 5187845, at * 12-13 (D. Haw. Oct. 17, 2012) (finding that an employer's investigation concerned alleged discrimination based on jealousy, not sex, and therefore did not give rise to a cognizable Title VII claim).

only in his official capacity.  With respect to claims for
prospective injunctive relief under <u>Ex Parte Young</u>, the court
notes that no ongoing retaliation by Okimoto himself is alleged.
Under these circumstances, Kepilino may not seek prospective
injunctive relief.  <u>See</u> <u>Papasan</u>, 478 U.S. at 277-78.
The Title VII claim against the HDOT, however, is sufficient to
survive dismissal.  <u>See</u> <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506
(2002) (an employment discrimination complaint need only specify
allegations in a manner providing sufficient notice).

### C.   Kepilino's Equal Protection Claim Fails.

In Count III, Kepilino asserts that the HDOT and
Okimoto in his official capacity subjected her to disparate
treatment based on her disability, in violation of the Equal
Protection Clause.  Defendants argue that Count III must be
dismissed because there is no direct cause of action under the
Constitution.

Litigants seeking relief from a defendant's allegedly
unconstitutional conduct must assert a cause of action under 42
U.S.C. § 1983.  Kepilino did not assert a § 1983 claim.
Even if the court construes Count III as a § 1983 claim, it
fails.  Section 1983 authorizes assertion of a claim for relief
against a "person" who acts under color of state law.  A suable §
1983 "person" encompasses state and local officials sued in their
personal capacities, municipal entities, and municipal officials

sued in an official capacity.  <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58 (1989).  A § 1983 action may not be maintained against a state employee sued in an official capacity because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  <u>Id.</u>  The HDOT, as an arm of the State, and Okimoto, as an individual sued in his official capacity, are therefore not subject to suit under § 1983.

> **D.  The Court Stays the Motion Relating to Counts IV and V Insofar as Those Counts are Aimed at Individuals Sued in Their Individual Capacities.**

The portions of the motion relating to section 278-2 claims in Counts IV and V against Dau and Livermore in their individual capacities are stayed pending a decision by the Hawaii Supreme Court in <u>Lales v. Wholesale Motors Co.</u>, 127 Haw. 412, 279 P.3d 77 (Ct. App. 2012)(unpublished), <u>cert. granted</u>, 2012 WL 4801373 (Haw. Oct. 9, 2012).

Whether chapter 378 limits claims that may be brought against co-workers is an issue as to which there is, as yet, no clear statement by the Hawaii Supreme Court. Litigants and courts addressing this issue have relied on, among other things, analogies to Title VII, under which claims against individual employees are not allowed.  <u>See</u> <u>Miller v. Maxwell's Int'l, Inc.</u>, 991 F.2d 583, 587-88 (9th Cir. 1993)("Congress did not intend to impose individual liability on employees . . . . If Congress

20

decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.").  But there will soon be a definitive resolution as to whether chapter 378, in contrast to Title VII, allows discrimination claims to be brought directly against individuals (even if not for aiding and abetting, as expressly permitted by section 378-2(3)).  The Hawaii Supreme Court is expected to rule soon on this very issue in <u>Lales</u>.

The <u>Lales</u> ruling by the Hawaii Intermediate Court of Appeals that is now being reviewed by the Hawaii Supreme Court held that individual employees could be sued under section 378-2 both as an employer's agents and for aiding and abetting discrimination.  In so ruling, the ICA adopted the reasoning of Judge J. Michael Seabright of this court in <u>Sherez v. Hawaii Department of Education</u>, 396 F. Supp. 2d 1138, 1145 (D. Haw. 2005).  The ICA did not mention that the Ninth Circuit had, in a different case raising the same issue, determined that "there is no individual liability under Hawaii Revised Statutes § 378-2(1)(A) and (2)," notwithstanding the individual liability for aiding and abetting discrimination provided for by section 378-2(3).  See <u>Lum v. Kauai Cnty. Council</u>, 358 Fed. App'x 860, 862 (9th Cir. 2009)(affirming decision in Civ. No. 06-00068 SOM/LEK, 2007 WL 3408003 (D. Haw. Nov. 9, 2007)).

If the Hawaii Supreme Court affirms the ICA's ruling in Lales, this court will of course apply the Hawaii Supreme Court's reasoning rather than the Ninth Circuit's in any dispute turning on the applicability of section 378-2 to individual employees. Until the Hawaii Supreme Court's rules, however, the court stays the portions of the motion relating to Counts IV and V insofar as they assert section 378-2 claims against Livermore and Dau in their individual capacities.  This stay relates to the motion but does not apply to discovery.

IV.      CONCLUSION.

The court GRANTS IN PART, DENIES IN PART, and STAYS IN PART Defendants' Motion for Judgment on the Pleadings.  Judgment on the pleadings is granted to the HDOT and Okimoto on the ADA claim in Count I.  Count II (Title VII retaliation) may proceed only against the HDOT, and is otherwise dismissed.  Counts III (Equal Protection Clause) and VI (ADA retaliation) are dismissed in their entirety.  Counts IV and V (section 378-2) are dismissed to the extent the claims are brought against the HDOT.  The portions of Counts IV and V brought against Dau and Livermore in their individual capacities are stayed pending the outcome of Lales.

In summary, this order leaves for further adjudication the portion of Count II against the HDOT that asserts Title VII retaliation relating to Kepilino's testimony on behalf of another

22

Title VII complainant, while staying Counts IV and V (section 378-2 claims) against Dau and Livermore.

 The parties are directed to inform this court promptly upon the Hawaii Supreme Court's issuance of a decision in <u>Lales</u>.

 IT IS SO ORDERED.

 DATED: Honolulu, Hawaii, June 19, 2013.



 <u>/s/ Susan Oki Mollway   </u>
Susan Oki Mollway
Chief United States District Judge

<u>Jessica L. Kepilino v. State of Hawaii, et al.</u>, 12-cv-00066 SOM/BMK; ORDER GRANTING IN PART, DENYING IN PART, AND STAYING IN PART, DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS