IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JESSICA L. KEPILINO,            )<br>                                 )<br>          Plaintiff,             )<br>                                 )<br>     vs.                         )<br>                                 )<br>STATE OF HAWAII, DEPARTMENT      )<br>OF TRANSPORTATION; GLENN         )<br>OKIMOTO in his Official          )<br>Capacity; RICHARD LIVERMORE      )<br>in his Official and              )<br>Individual Capacity; LISA DAU    )<br>in her Official and              )<br>Individual Capacity; and JOHN    )<br>DOES 1-5; JANE DOES 1-5; DOE     )<br>Government Agencies 1-5, DOE     )<br>Corporations 1-10,               )<br>                                 )<br>          Defendants.            )<br>_____  ) | CIVIL NO. 12-00066 SOM-BMK<br><br>ORDER STRIKING DECLARATIONS<br>FILED SEPTEMBER 8, 2013;<br>ORDER GRANTING MOTION FOR<br>SUMMARY JUDGMENT FILED BY<br>DEFENDANT STATE OF HAWAII,<br>DEPARTMENT OF TRANSPORTATION |

**ORDER STRIKING DECLARATIONS FILED SEPTEMBER 8, 2013;
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT
STATE OF HAWAII, DEPARTMENT OF TRANSPORTATION**

**I.      INTRODUCTION.**

Plaintiff Jessica Kepilino is suing her employer, Defendant State of Hawaii Department of Transportation ("HDOT"), as well as Defendants HDOT Director Glenn Okimoto, supervisor Richard Livermore, and supervisor Lisa Dau (collectively, "Defendants"), for alleged employment discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act, the Equal Protection Clause, and section 378-2 of Hawaii Revised Statutes.

On June 19, 2013, the court dismissed most of the claims asserted in this case.  The court stayed claims brought

under section 378-2 of Hawaii Revised Statutes against individuals in their individual capacities, pending a decision by the Hawaii Supreme Court as to whether such claims are cognizable. The only other claim remaining for adjudication, Claim II of the Second Amended Complaint, was asserted under Title VII, alleging retaliation against Kepilino for her testimony in an administrative hearing. Because that testimony was in a hearing pertaining to unemployment insurance, not Title VII, Kepilino fails to demonstrate that Title VII's anti-retaliation provision is applicable. Accordingly, summary judgment is granted in favor of Defendants on Claim II of the Second Amended Complaint.

**II.      BACKGROUND.**

In its order of June 19, 2013, this court ruled that, putting aside the stayed claims asserted against individuals under chapter 378 of Hawaii Revised Statutes, the only claim remaining for adjudication in this case was the "portion of Count II against the HDOT that asserts Title VII retaliation relating to Kepilino's testimony on behalf of another Title VII complainant." See ECF No. 64 at 22-23, PageID #s 508-09.

In relevant part, Paragraphs 47 to 48 of the Second Amended Complaint assert a violation of Title VII's anti-retaliation provision based on what Kepilino says was retaliation arising out of her testimony "as a witness at an Administrative

Hearing in support of a Plaintiff who had filed a Title VII and ADA lawsuit against HDOT." See ECF No. 12, PageID # 89.

In an answer to an interrogatory asking for the facts supporting Claim II, Kepilino indicated: "January 8, 2010, I testified under oath as a witness on behalf of a former OCR worker Elizabeth Motoyama." See ECF No. 77-7, PageID # 1139. In her deposition, Kepilino clarified that this testimony occurred at the Department of Labor and Industrial Relations and related to unemployment insurance, not to a Title VII claim. See ECF No. 65-11, PageID # 719-20. Kepilino explained that the unemployment insurance hearings officer had asked her about the mailroom procedures. Asked at her deposition whether she had testified about anything else, Kepilino said, "No. That was it." Id. PageID # 721.

Elizabeth Motoyama says that, at the administrative hearing on January 8, 2010, concerning Motoyama's unemployment insurance appeal, Kepilino additionally testified that Motoyama had not disrupted operations at her office or in the mailroom. See Declaration of Elizabeth-Ann Motoyama ¶ 21, ECF No. 74-10. Motoyama says that Kepilino helped to prove that the reasons given for her termination were false and that Motoyama was therefore eligible for unemployment insurance benefits. Id. Motoyama appears to have received an administrative decision stating that "employer has not provided sufficient evidence that

3

there was any willful misconduct on your part." See Motoyama v. Hawaii Dep't of Transp., 864 F. Supp. 2d 965, 983 n.15.

The unemployment insurance proceeding was not the only time Motoyama had sought relief. In 2009, Motoyama had filed charges of discrimination with the Hawaii Civil Rights Commission ("HCRC") and the Equal Employment Opportunity Commission ("EEOC"). Motoyama alleged that, as a Civil Rights Specialist for HDOT, she had been discriminated against in violation of the Americans with Disabilities Act. She complained that HDOT and its employees had retaliated against her because she had helped another employee file an EEOC charge based on an alleged Title VII violation. Motoyama explained that, on March 4, 2009, she had been placed on administrative leave with pay based on complaints that she had been "disruptive." See Charge of Discrimination, March 11, 2009, filed in Civ. No. 10-00464 ACK/RLP as ECF No. 81-24, as amended on Aug. 28, 2009, ECF No. 81-26. The same day, Motoyama filed a separate charge of discrimination with the HCRC and EEOC, complaining that she had been discharged via a letter dated August 18, 2009, for having allegedly filed false complaints. See Charge of Discrimination, Aug. 28, 2009, filed in Civ. No. 10-00464 ACK/RLP as ECF No. 81-30, PageID # 1541.

Motoyama thereafter received right-to-sue letters and filed a Complaint in the United States District Court for the

District of Hawaii based on the charges of discrimination. See Motoyama v. State of Hawaii, Civ. No. 10-00464 ACK/RLP. Ultimately, Judge Alan C. Kay granted summary judgment in favor of Defendants in an order of March 29, 2012. See id., 864 F. Supp. 2d 965 (D. Haw. 2012). To the extent Motoyama was claiming that she had been retaliated against because she had helped another employee file a civil rights complaint with the EEOC, Judge Kay noted that Motoyama was not engaging in activity protected by Title VII. Instead, she was simply doing her job, which involved the intake and investigation of employee complaints. Id., at 978-80.

To the extent Motoyama argued that she had participated in a protected activity by filing her own EEOC charges, Judge Kay ruled that she had not shown any causal connection between that participation and her administrative leave and subsequent termination. With respect to the administrative leave of March 2009, Judge Kay reasoned that Motoyama had already been the subject of complaints at the time she filed her March 2009 EEOC Charge. See id. at 982. With respect to Motoyama's termination, Judge Kay reasoned that she had received a letter indicating that she was being terminated in August 2009, but did not file her EEOC charge until September 2009. Accordingly, the termination could not have been based on the September 2009 EEOC charge. Id.

On September 8, 2013, the day before the hearing on the present motion for summary judgment, Kepilino filed her own supplemental declaration as well as a supplemental declaration by Motoyama. Kepilino's supplemental declaration indicates that, at Motoyama's unemployment insurance hearing, Kepilino testified, that, because Motoyama had not engaged in misconduct in the mailroom, Kepilino had challenged the false reasons the State had given for having terminated Motoyama. See Second Declaration of Jessica L. Kepilino ¶ 1, ECF No. 79-1. Motoyama's supplemental declaration indicates that, at her unemployment insurance hearing, Kepilino testified that Motoyama had not been disruptive and that a certain practice in the mailroom was the norm. See Declaration of Elizabeth-Ann K. Motoyama ¶ 13, ECF No. 79-2. For the reasons discussed below, the court strikes the declarations filed by Kepilino on September 8, 2013.

**II.     The Court Strikes the Declarations Filed on September 8, 2013.**

Defendants' Motion for Summary Judgment was filed on June 19, 2013. See ECF No. 65. Although initially set to be heard in August 2013, the motion was ultimately heard on Monday, September 9, 2013. See ECF No. 68.

On Friday, September 6, 2013, the court issued its usual prehearing inclinations. See ECF No. 78. In boilerplate language preceding the case-specific inclinations, the court reminded the parties that supplemental briefing and supplemental

6

affidavits/declarations responding to the inclinations were prohibited without leave of court.  The reminder reiterated Local Rules 7.4 and 56.1(j), which note that, with respect to summary judgment motions, oppositions and replies are allowed, but "[n]o further or supplemental briefing shall be submitted without leave of court."  Local Rule 7.4.  Local Rule 56.1(h) states that affidavits and declarations shall only be attached to a concise statement, and "[s]upplemental affidavits and declarations may only be submitted with leave of court."

The inclinations asked Kepilino to come to the hearing "prepared to identify any fact(s) in the record supporting a Title VII retaliation claim, as it does not appear that Kepilino testified in an administrative hearing concerning a matter protected by Title VII."  See ECF No. 78.  Instead of coming to the hearing and identifying facts already in the record, Kepilino filed supplemental declarations, in violation of Local Rule 56.1(h).  Because Kepilino did not receive leave of court to file the declarations, the court grants Defendants' motion to strike them from the record.

The court notes that HDOT's motion to strike Kepilino's supplemental declaration contended that the declaration was a sham.  See Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit

contradicting his prior deposition testimony."). The Ninth Circuit has explained that it has

> fashioned two important limitations on a district court's discretion to invoke the sham affidavit rule. First, we have made clear that the rule does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony; rather, the district court must make a factual determination that the contradiction was actually a "sham." Second, our cases have emphasized that the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit. Thus, the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit.

Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998-99 (9th Cir. 2009) (alterations, quotation marks, and citations omitted).

The court recognizes that Kepilino's supplemental affidavit of September 8, 2013, conflicts with her earlier deposition testimony. In her deposition, she indicated that, at the unemployment insurance appeal hearing, she had only testified about the procedures in the mailroom. In her supplemental declaration, she seeks to add that she testified that Motoyama had not committed misconduct. Because the court strikes the supplemental declaration for violating the Local Rules, the court need not reach the issue of whether the supplemental declaration

8

is a "sham."  The court notes that Kepilino's supplemental declaration is consistent with Motoyama's earlier declaration and that, even if the court did consider it, it would not be sufficient to raise a genuine issue of fact that would preclude summary judgment.

**III.        SUMMARY JUDGMENT STANDARD.**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial.  T.W. Elec. Serv., 809 F.2d at 630.  At least some "'significant probative evidence tending to support the complaint'" must be produced.  Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv.

Co., 391 U.S. 253, 290 (1968)); see also Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587). Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

In adjudicating summary judgment motions, the court must view all evidence and inferences in the light most favorable to the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. Id. When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Id.

**IV.     ANALYSIS.**

Kepilino asserts that HDOT retaliated against her in violation of § 2000e-3(a). To make out a prima facie case of such retaliation, Kepilino must show that (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). Accord Univ. of Texas S.W. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013) ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.").

Protected activities for purposes of § 2000e-3(a) are subject to an opposition clause and a participation clause. Specifically, Section 704(a) of Title VII provides that an employer may not "discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Defendants' motion for summary judgment argues that Kepilino's testimony at Motoyama's unemployment insurance appeal

hearing was not a protected activity for purposes of the anti-retaliation provision in § 2000e-3(a).  See ECF No. 65-3, PageID # 545.  In this regard, Defendants submit evidence that satisfies their initial burden on this motion, shifting the burden to Kepilino to demonstrate a genuine issue of material fact as to whether she engaged in a protected activity.  See Nissan Fire, 210 F.3d at 1103.  Because Kepilino fails to raise a genuine issue of fact as to whether she engaged in a protected activity, summary judgment is granted in favor of Defendants on Kepilino's retaliation claim.

Interpreting the facts in the light most favorable to Kepilino, the court recognizes that she testified at Motoyama's unemployment insurance hearing that Motoyama had not been disruptive.  See Motoyama Decl. ¶ 21, ECF No. 74-10.  Kepilino thereby helped Motoyama to qualify for unemployment insurance benefits; the hearing established that Motoyama had not been terminated for misconduct.  See Haw. Rev. Stat. § 383-30(2) (disqualification from benefits for misconduct); Motoyama, 864 F. Supp. 2d at 983 n.15 (indicating that the administrative hearing resulted in a decision that "employer has not provided sufficient evidence that there was any willful misconduct on your part").  However, Kepilino submits no evidence that Motoyama's hearing involved anything relating to Title VII.  Nothing in the record establishes that Motoyama's filing of charges with the HCRC or

13

the EEOC was relevant to the administrative hearing concerning her unemployment insurance benefits. That hearing appears to have concerned only whether Motoyama had engaged in misconduct.

Even if the court were to examine Kepilino's stricken declaration, it would not find evidence supporting a Title VII claim. The declaration says merely that Kepilino's testimony at the unemployment insurance hearing was that Motoyama's actions were not misconduct. She thus argues that she "opposed the false reasons" HDOT gave for Motoyama's termination. See ECF No. 79-1 ¶ 1. Kepilino does not say that Motoyama's filing of charges with the HCRC and EEOC or that any alleged retaliation against Motoyama in violation of Title VII was at issue or even raised at the hearing concerning Motoyama's unemployment insurance benefits.

The court recognizes, of course, that Kepilino could, in theory, have a meritorious claim under Title VII even if Motoyama's Title VII claim was not meritorious. See Learned v. City of Bellevue, 860 F.2d 928 (9th Cir. 1988). That is, Kepilino's testimony in support of even an unmeritorious Title VII claim by Motoyama could support Kepilino's own Title VII retaliation claim. However, Kepilino simply fails to raise a genuine issue of fact as to whether Title VII was at all relevant to her testimony in the unemployment insurance hearing.

The record before this court indicates only that Kepilino may have testified that Motoyama did not engage in misconduct. Motoyama's charges with the HCRC and the EEOC and Motoyama's alleged Title VII retaliation claim were not, at least based on the record, tied to the misconduct at issue in the unemployment insurance hearing. Id. at 932 (requiring the underlying discrimination to reasonably be perceived as discrimination prohibited by Title VII). In other words, nothing in the record indicates that the hearings officer was examining whether Motoyama's alleged misconduct was a pretext for discrimination in violation of Title VII. For example, the record does not establish that Motoyama was claiming in the administrative hearing that she was denied benefits because she was a member of a class protected by Title VII, or that Kepilino had opposed a practice made unlawful by Title VII. The record only indicates that the hearings officer was examining whether there was sufficient evidence of willful misconduct to justify the denial of unemployment insurance benefits to Motoyama. Under these circumstances, Kepilino fails to raise a genuine issue of fact as to whether she opposed any practice or participated in any manner in an investigation, proceeding, or hearing concerning a protected activity under Title VII. See 42 U.S.C. § 2000e-3(a).

**IV.     CONCLUSION.**

Summary judgment is granted in favor of HDOT on Claim II of the Second Amended Complaint.

This order leaves for further adjudication Counts IV and V (section 378-2 claims against Defendants Dau and Livermore), which have been stayed pending the Hawaii Supreme Court's issuance of a decision in <u>Lales v. Wholesale Motors Company</u>, 127 Haw. 412, 279 P.3d 77 (Ct. App. 2012) (unpublished), <u>cert. granted</u>, 2012 WL 4801373 (Haw. Oct. 9, 2012).

The parties are directed to promptly inform this court when the Hawaii Supreme Court decides <u>Lales</u>.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 29, 2013.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

<u>Jessica L. Kepilino v. State of Hawaii, et al.</u>, Civ. No. 12-00066 SOM/BMK; ORDER STRIKING DECLARATIONS FILED SEPTEMBER 8, 2013; ORDER GRANTING MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT STATE OF HAWAII, DEPARTMENT OF TRANSPORTATION